GUIDRY, Judge.
This is a slip and fall case. Eula Zenon allegedly injured herself on May 23, 1983, when she slipped and fell on a partially melted ice cream spill while shopping at a K-Mart store in Lafayette, Louisiana. Eula Zenon and her husband, Oren, brought this damage suit against defendant, K-Mart Corporation.
After trial, the district court concluded that defendant, K-Mart Corporation, was negligent and rendered judgment against K-Mart in favor of Eula and Oren Zenon in the amounts of $2,500.00 and $632.94, respectively. Plaintiffs appealed seeking an increase in the amount of the awards. Defendant answered the appeal questioning liability and, in the alternative, urging that the trial court’s general damage award to Eula Zenon is excessive.
In his written reasons for judgment, the trial judge set forth the essential facts as follows:
“The plaintiff went into defendant’s store to purchase some turtle wax and some shorts. She located the wax then went into the underwear department looking for suitable shorts. Not readily finding what she sought she began an approach to a person or persons she took to be K-Mart employees. While doing so she slipped on what she later determined to be ice cream and fell to the floor. She did not see the ice cream before she fell. Persons came to her assistance and a stool was secured on which she could sit. She complained of hurting and suggestions were made that she see a doctor. While in the store she informed others of her fall. She left the store and drove her car visiting Dr. Foumet that afternoon.”
The record does not establish who dropped the ice cream on the floor.
In its answer to the appeal, defendant argues that the trial court erred in finding liability on the part of the defendant.
In slip and fall cases, when a plaintiff proves that he/she slipped and fell because of a foreign substance on the floor, a presumption of negligence arises and the burden of proof shifts to the defendant to introduce exculpatory evidence to negate the presumption that it was negligent. Arnold v. T.G. & Y. Stores, 466 So.2d 529, 532 (La.App. 3rd Cir.1985), writ denied, 470 So.2d 126 (La.1985).
In the instant case, Zenon established that she slipped and fell on ice cream while shopping in defendant’s store. At that point, the burden of proof shifted to the defendant to negate any negligence on its part.
With reference to the defendant’s burden of proof in such cases, our Supreme Court stated in Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984), at pages 686-687:
“The critical effect of the partial shifting of the evidentiary burden was the virtual elimination of proof of actual or constructive knowledge as an element of plaintiff’s case. The spill of a foreign substance onto the floor is caused either by a store employee or by a customer. Under the new evidentiary burden, the store operator is required to prove that his employees did not cause the hazard and that he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers. Implicit in the change of judicial attitude regarding constructive knowledge is the consideration that diligent protective measures by store operators will lead to the actual discovery of most hazards. Indeed, this consideration is the very basis for imposing the duty on the store operator to utilize adequate protective measures that lead to the actual discovery of dangerous conditions. The degree of vigilance, of course, must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store, and other such considerations.
******
The ... appropriate inquiry is whether the store operator took reasonable steps to fulfill its twofold duty to discover and to correct dangerous conditions reasonably anticipated in its business activity.”
*39 Linda Fisher, an area supervisor at the involved K-Mart store, was the only witness who testified regarding the clean-up procedures and protective measures followed by the defendant. She testified that each night following closing a crew came in and swept and mopped the floor of the entire store.' She stated that, during store hours, every department employee was required to keep an eye out for spills and the security manager would walk the entire store about every 45 minutes to an hour. Additionally, according to this witness, there were three supervisors who walked the floor throughout the entire day observing their respective areas. The witness also confirmed that the floor maintenance policy was zealously followed. In his written reasons for judgment, the trial judge stated:
“This witness, the only one produced by the defendant, only learned of this incident two weeks before the trial date, that is, over three years following the accident. She did not supply any specific evidence about the maintenance activities on the date in question, nor any evidence to show whether or how effectively the floor policy was being enforced at the time in question.
The plaintiff was actively shopping at the time of the incident. She still sought merchandise and was not on her way out. She was entitled to rely on the defendant to keep all passageways safe. The evidence submitted by the defense does not negate the apparent negligence of permitting a dangerously slippery substance to remain on the floor.”
We do not fully agree with the trial court’s evaluation of and the weight accorded to Ms. Fisher’s testimony. This witness testified that she was employed as an area supervisor in the defendant’s store on the date of the accident. Although she was unaware that plaintiff, Eula Zenon, was the victim of a slip and fall accident on that date, she was nonetheless in a position to testify regarding the clean-up procedures and protective measures followed by defendant in an effort to keep the passageways of its store reasonably safe. In any event, we need not further consider whether this evidence was sufficient to satisfy the defendant’s burden of establishing that adequate floor maintenance procedures were in effect and followed on the date of the accident, such that it would have known, under most circumstances, of a hazard caused by customers. In slip and fall cases, the burden which shifts to the owner of the store to exculpate itself from the presumption that it was negligent is twofold, i.e., the store operator is required to prove that its employees did not cause the hazard and it exercised such a degree of care that, under most circumstances, a hazard caused by customers would not be undetected. In the instant case, even if the defendant had established that adequate floor maintenance procedures were in effect on the date of the accident, the record does not afford any basis for the trier of fact to determine that the defendant’s own employees did not cause the hazard.
In the very recent case of McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987), our Supreme Court, in concluding that defendant did not meet its burden of proof in a similar case, stated:
“Many of the employees who could have caused the spill were not asked to testify. Merely proving adequate clean up procedures is insufficient to prove a spill was not caused by one of the store’s own employees.”
In the instant case, defendant offered no proof whatever which would negate the possibility that one of its own employees dropped the ice cream on the floor which resulted in plaintiff’s fall. Hence, following the dictates of Brown, supra, and McCardie, supra, we affirm the trial court’s determination that defendant failed to exculpate itself from the presumption that its fault caused plaintiff’s fall.
QUANTUM
On appeal, plaintiff urges that the award granted by the trial court is inadequate. Defendant urges that the award is excessive.
The record reflects that Eula Zenon drove herself to Dr. J.J. Foumet’s office on *40 the afternoon of the accident. Eula was examined in Dr. Fournet’s office. X-rays were taken of her knees and ankles. The x-rays were essentially normal. Dr. Four-net diagnosed Eula as suffering from a mild strain of the left knee and strains to both ankles. The record indicates that Dr. Foumet treated Eula conservatively from May 27, 1983 to June 10, 1983. On the latter date, he referred Eula to Dr. Charles Olivier, an orthopaedic surgeon. Dr. Four-net saw Eula again in November 1984 when she complained of backache. Dr. Foumet testified that he could not relate plaintiffs back complaint in November 1984 to the slip and fall accident of May 27, 1983.
Dr. Olivier testified that he examined Eula on June 24, 1983, and diagnosed her as being severely knock-kneed and flatfooted. He stated that these congenital conditions were aggravated by the accident. He prescribed anti-inflammatory drags and conservative physical therapy. Dr. Olivier last saw Eula on September 13, 1983. She was told to return in one month but she did not keep the appointment.
Eula was also later examined and treated by Dr. William Bernard and Dr. Charles Boustany, both general practitioners. Their findings were essentially negative and the treatment afforded Eula was conservative.
During the trial, plaintiffs attempted to introduce records from the office of Dr. J. Boring Montgomery, who died prior to trial. The records were produced pursuant to a subpoena duces tecum and supposedly made reference to Dr. Montgomery’s treatment of Eula. Plaintiffs also attempted to have admitted into evidence five letter reports allegedly authored by Dr. Montgomery and sent to plaintiffs’ counsel. The letter reports and records were proffered subject to defense counsel’s objection. The trial judge denied admission of both offerings. On appeal, plaintiffs assert that the trial judge’s ruling was incorrect. We disagree. The records and the letter reports of Dr. Montgomery to plaintiffs’ counsel were hearsay. Johnson v. Masur, 493 So.2d 881 (La.App. 3rd Cir.1986); Brasseaux v. Standby Corp., 371 So.2d 1174 (La.App. 1st Cir.1979).
In sum, the record reflects that Eula Zenon suffered from severe “flat feet” and “knock knees” prior to the accident. These conditions were aggravated by the slip and fall. The findings of her examining and treating physicians were essentially negative. Complaints about her lower back and neck did not develop until several months post accident. There is no evidence in the record that plaintiff’s activities were curtailed to any degree for an extended period of time. We conclude that, under the circumstances, the trial court did not abuse its much discretion, the award being neither excessive or inadequate.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Plaintiffs-appellants are cast with all costs on appeal.
AFFIRMED.