DECUIR, Judge.

PROCEDURAL HISTORY

This case arises out of a suit filed by Madeline Arleene Jones, individually and on behalf of her minor children, Tracey Allen Jones, Miranda Kaye Jones and Jeffrey Waylon Jones, for the wrongful death of Kirby W.. Jones on December 1, 1989. Mr. Jones would have been 37 years old on December 18, 1989. Kirby Jones died as a result of a collision between decedent’s vehicle and a locomotive owned by Kansas City Southern Railway Company. At the time of the accident, the locomotive was operated by George C. Merritt, Jr., and Harry L. Dilla-hunty.
*396 Plaintiffs allege in their petition that Kirby Jones’ death was caused by defendants’ negligence in failing to sound the train whistle to warn of the oncoming train, failing to maintain the railroad signal device at the crossing in working condition, and maintaining a defective and dangerous railroad crossing. Defendants answered the suit alleging that the train diesel horn and bell were sounded to warn decedent of the oncoming train and further alleging that prior to the accident the advance warning signs, including railway crossing signs and flasher lights, were operating and visible to motorists approaching the railway crossing. Defendants specifically pled in their answer the comparative negligence of Kirby Jones in failing to see, hear, and heed the train’s horn, railway warning signs and flasher lights at the crossing in question.
After the close of all the evidence, the trial judge granted a directed verdict on the issue of liability in favor of plaintiffs and against defendants, reserving for the jury the issue of quantum. The trial judge further ordered that defendants were precluded from arguing comparative negligence of the plaintiffs’ decedent. After trial on the issue of quantum, the jury returned a verdict and judgment was rendered in favor of plaintiffs in the total amount of $1,175,000.00, plus interest and costs.
Defendants appealed contending the trial judge erred in granting plaintiffs’ motion for directed verdict and in making certain procedural and substantive errors of such weight as to deprive defendants of their constitutional guarantee to a fair trial. This court concluded the plaintiffs’ motion for directed verdict should have been denied and reversed and remanded for a new trial. Plaintiffs filed an application with the Supreme Court for writ of certiorari or review of the judgment of this court. Writs were granted and the case remanded to this court for consideration of the trial record and a decision on the merits, 625 So.2d 157.
Because of the trial judge’s granting of plaintiffs’ motion for directed verdict, the jury did not consider the issue of liability. We shall review the record evidence and provide a de novo review. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975); Graves v. Lou Ana Foods, Inc., 604 So.2d 150 (La.App. 3d Cir.1992); Williams v. American Family Mut. Ins., 520 So.2d 1082 (La.App. 3d Cir.1987).

LIABILITY

The accident at issue occurred in the predawn hours or approximately 5:10 a.m. on December 1, 1989, at the railway crossing of .Louisiana Hwy. 158 and the Kansas City Southern main line track in Grant Parish, Louisiana. The only eyewitnesses to the accident were the locomotive engineer and the brakeman at the time of the accident, George Merritt, Jr. and Harvey Dillahunty. The record reflects a conflict in testimony between disinterested witnesses and the engine crew.
Plaintiffs presented witnesses at trial who testified that immediately after the accident the warning flashers at the crossing in question were not in operation. Edmond Young-blood, who lives less than a mile from the railway crossing, testified that he was the first person to arrive at the scene after the accident. According to Mr. Youngblood, the railway warning flashers were not in operation when he arrived at the scene. Additionally, Mr. Youngblood testified that although he lives close to the railroad track, he did not hear the sound of the train’s whistle or bell nor did he hear the sound of the train’s engine nor the sound of the impact. Ernest Wehunt testified he lives approximately ½ mile from the railway crossing. Mr. Wehunt heard the idling of the train’s engine from his home, but did not hear a horn or whistle. Mr. Wehunt also testified that when he arrived at the scene shortly after the accident, the railway warning lights were not in operation. Madeline Arleene Jones testified that when she arrived at the scene of the accident on her way to work, the lights at the crossing were not in operation. At the time Ms. Jones did not become aware her husband had been involved in an accident and proceeded to work by an alternate route. Other witnesses testified on behalf of plaintiffs that the warning lights in question had malfunctioned in the past. Bobby Duren, Ruth Brumley and Mike Beebe testified that they *397 had proceeded through the crossing on the morning prior to the accident, at which time the warning lights were not working. However, Mr. Beebe admitted he was not certain whether the train he saw on the track at the time was moving or not. The court notes that the train Mr. Beebe and Mr. Duren observed was southbound and was not the same train involved in the accident which was northbound at the time of the accident.
Both George Merritt and Harvey Dillahunty testified that prior to the accident they saw the Jones vehicle approach the railway crossing. According to the testimony of these witnesses and other evidence presented at trial, Mr. Jones did not slow his vehicle for the oncoming train or take other evasive action. Both Merritt and Dillahunty testified that Mr. Merritt sounded the diesel horn and bell to warn of the oncoming train. Mr. Merritt testified that when he realized Mr. Jones would not stop at the crossing, he immediately applied the train’s emergency brake. Both of these witnesses testified the railway warning signals or flashers at the crossing were in operation prior to and at the time of the accident and continued to function properly after the accident. Douglas Gremillion, the state trooper who investigated the accident, testified that when he arrived at the scene of the accident the warning flashers were functioning and continued to function properly until the train was given clearance to proceed on its route. Wallace Liner, an employee of the Colfax Police Department, testified that when he arrived at the scene shortly after the accident the warning signals were functioning properly. However, Donald Johnson, claims agent with Kansas City Southern Railway Company who investigated the accident, testified Mr. Liner advised him he had no information that would shed light on the scene immediately before or after the accident. Grant Parish Sheriff Deputy Donald Thompson testified that when he arrived at the scene, the warning signals were in operation on the east side of the track. We note that these witnesses all arrived at the scene after Mr. Young-blood, Mr. Wehunt, and Mrs. Jones. Curnell Clark, conductor of the train at the time of the accident, initially testified the warning lights were flashing immediately after the accident. At trial Mr. Clark testified he had no doubt that the signals were flashing when he arrived at the scene. However, Mr. Clark admitted at trial that he previously stated in his deposition taken prior to trial he believed the lights were flashing but “was not sure”. Mr. Clark arrived at the scene 5 minutes before the State Police arrived, or approximately 25 minutes after the accident. Finally, Gregory Landsdale, signal maintainer employed by the defendant railroad, testified he inspected and tested the warning devices at the crossing on the date of the accident and found the system to be operating properly. Mr. Landsdale did not arrive at the scene until 6:30 or 7:00 a.m.
We find based upon the record that there are credible explanations as to the reason the warning devices may not have been in operation at the time of the accident but later activated, e.g. by vibrations of the locomotives on the tracks after the accident or signal interference.
We conclude the defendants’ failure to maintain railroad warning signals in working condition and in failing to sound the train horn or whistle in compliance with La.R.S. 32:168 constitute negligence.
We now consider the comparative negligence of Kirby Jones. Our review of the record reveals the following facts. Painted highway markings were clearly visible to motorists before reaching the railroad crossing in question and warning and crossbuck signs were in place. Trooper Gremillion testified there was an illuminized reflector type warning sign in advance of the crossing. It is uncontradicted that the train’s headlight was on at the time of the accident, and according to Trooper Gremillion, there were no obstructions to a motorist’s view for at least 200 to 250 feet from the crossing. We note that plaintiffs admit in brief that the decedent had a clear view of the. crossing for some 500 feet. The evidence reflects the decedent did not slow his vehicle upon approaching the crossing, but continued at a steady pace despite the advance warning signs and highway markings. We note that this was a cold morning and decedent’s windows were up at the time of the accident.
*398 We conclude that by the decedent’s failure to heed the advance warnings, i.e. painted highway markings and advance erossbuck sign, he failed to see that which he could have seen, and such failure constitutes negligence. The law does not impose an absolute duty to stop at all railroad crossings. Thomas v. Missouri Pacific Railroad Co., 466 So.2d 1280 (La.1985). However, generally a motorist must use his sense of sight and hearing for a possible oncoming train before traversing the crossing and is required to proceed cautiously when crossing railroad tracks. Trabeau v. Mack Trucks, Inc., 543 So.2d 1381 (La.App. 1st Cir.), writ denied, 550 So.2d 651 (La.1989); Thomas, supra. The fact that the crossing flasher signal malfunctioned does not negate fault on the part of Kirby Jones. A motorist is under a duty to act as a reasonable and prudent person under like circumstances and is charged with keeping a proper lookout, seeing what he should have seen and observing traffic signs. Cooke v. Travelers Ins. Co., 590 So.2d 657 (La.App. 3d Cir.1991), writ denied 592 So.2d 414 (1992).
Accordingly, the court allocates the respective fault of the parties: 90% to defendants and 10% to Kirby Jones. Therefore, plaintiffs shall be awarded 90% of their damages.

DAMAGES

Based upon this court’s independent review of the record, we agree with and conclude the amount of damages awarded under the facts of this case to be appropriate and consistent with the jurisprudence of this state. See Graves, supra; Marks v. Louisiana Farm Bureau Casualty, Ins., 556 So.2d 949 (La.App. 3d Cir.1990). The awards to plaintiffs are as follows:
Pre-death pain and suffering of Kirby Jones $ 25,000.00
Tracey Jones-Loss of love and affection and mental anguish 125,000.00
Miranda Jones-Loss of love and affection and mental anguish 125,000.00
Jeffery Jones-Loss of love and affection and mental anguish 125,000.00
Madeline Arleene Jones:
Medical & funeral expenses $ 10,000.00
Loss of love, affection, society and mental anguish 280,000.00
Past loss of support and services 35,000.00
Future loss of support and services 450,000.00 775,000.00
TOTAL $1,175,000.00
These total damages must be reduced by the percentage fault attributable to decedent’s comparative negligence.

DECREE

For the foregoing reasons, IT IS ORDERED, ADJUDGED, AND DECREED that judgment is rendered in favor of plaintiffs, Madeline Arleene Jones, individually and as administratrix for Miranda Kaye Jones and Jeffrey Waylon Jones, and Tracey Allen Jones, and against defendants, George C. Merritt, Jr., Harry L. Dillahunty, and Kansas City Southern Railway Company, in *399 the amount of $22,500.00, together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that judgment is rendered in favor of Madeline Arleene Jones, as administratrix for the benefit of Miranda Kaye Jones and against defendants, George C. Merritt, Jr., Harry L. Dillahunty, and Kansas City Southern Railway Company, in the amount of $112,500.00, together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that judgment is rendered in favor of Madeline Arleene Jones, as administratrix for the benefit of Jeffrey Waylon Jones and against defendants, George C. Merritt, Jr., Harry L. Dilla-hunty, and Kansas City Southern Railway Company, in the amount of $112,500.00, together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that judgment is rendered in favor of Tracey Allen Jones, and against defendants, George C. Merritt, Jr., Harry L. Dillahunty, and Kansas City Southern Railway Company, in the amount of $112,500.00, together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that judgment is rendered in favor of plaintiff Madeline Arleene Jones, and against defendants, George C. Merritt, Jr., Harry L. Dillahunty, and Kansas City Southern Railway Company, in the amount of $697,500.00, together with legal interest from date of judicial demand until paid.
Costs of appeal and the trial court are assessed 90% to defendants and 10% to plaintiffs.
DECISION RENDERED.